We'll hear the next case, United States v. Daniel Carpenter. May it please the Court, my name is Michael Levy. I represent Daniel Carpenter. The district court and the government in this case relied on the defendant's waiver of his speedy trial rights to cover 57 days of the several years between indictment and the eventual trial in the matter. But the Supreme Court had already made clear in Zedner v. United States that that was error. As a result, those days were not excluded from the speedy trial clock. Combined with 16 other unexcluded days over which there's no dispute in this case, more than 70 unexcluded days had elapsed before trial. Accordingly, the district court's order declining to dismiss the indictment on Speedy Trial Act grounds should be reversed. Zedner says clearly that a defendant's waiver is not enough for an ends-of-justice exclusion. An exclusion requires that the court make contemporaneous findings that the proposed continuance serves the ends of justice, and at some point before ruling on the motion to dismiss. Zedner also says that the ends-of-justice findings must be made, but if only in the judge's mind. In other words, even if it's not explicitly stated, as long as it is apparent that the district judge is going through the weighing process, that that is sufficient. Zedner does say that, and we can see how Zedner applied that. Because Zedner considered a conference at which the judge did almost exactly what the judge in our case did, and the Zedner court said, that's not making the findings. So in terms of making them in the judge's mind, there has to at least be a record that the judge was doing that, and then later on the judge can actually put into the written record what it is that constituted those findings. There is no evidence of that at all here. The critical conference was on December 4th of 2014, and the district judge did not make any contemporaneous findings. There is no mention of the Speedy Trial Act at all during that entire conference. You said there, and I'm looking at the appendix here at 509 to 510, it's at, as you say, a very lengthy conference, and this came at the very end. Yes. Of course, he was dealing with the defendant's motion to put off the trial many months. Yes. And there were lots of issues discussed during the course of the conference. But one of the things he talks about is the way the parties need to spend time with the voluminous document production, the need to take the depositions of these elderly witnesses who may not be around for the ultimate trial or may not be available or able to travel at least, but also the need for the finality of the process that they needed a trial date. And isn't the discussion of each of these factors the things that you would want to discuss in terms of making an interest of justice finding? Well, I'm not sure that there's as much of that from the district judge as Your Honor said. There's certainly a discussion about how it's a complicated case and that the defendants need to go through the discovery was there. The judge doesn't really say much about it at all other than, you know, to cut to the chase as the judge says, I'm going to grant the motion, I'm going to extend this. Well, he was there and listening, wasn't he? He was. So there wasn't a lot of discussion about it throughout the conference at all. And, you know, I think tellingly the judge at the end kind of says, see you later, right? We'll do the trial sometime in the fall. That is not indicative of the balancing that the Speedy Trial Act requires. What the judge did here is very much, again, what was left out was the balancing, the express here is a fixed period of time that is being sought. There was no fixed period of time because the judge never set one. I have considered on the one hand the defense need to prepare. On the other hand, the public's interest in this trial going forward at an appropriate pace. And I've decided that this period of time is, meets the ends of justice. That didn't happen here. The government is. You don't have to play a record during these proceedings. I mean, there was a discussion about what had to be done, what the defense wanted, what the government wanted, how many documents were being produced, how long it would take them to complete the production and so forth. And these are the things that are just typically discussed when you're considering the clock in a criminal case. I guess what I would say, Judge Parker, is to the extent that might be the instinct, the Supreme Court has said otherwise. What do you mean the instinct? The instinct that that is enough, that that shows a weighing that is sufficient to have actually made this finding. When you go down that road, you get stuck with the Supreme Court language that Judge Shin just pointed to you. It says you can make the excuse even if it's in his mind. Yes, but the Supreme Court. He doesn't have to quote the statute to you. That's certainly true, Your Honor, but the Supreme Court considered a conference, and we've attached it as an addendum to our reply brief, that reads almost exactly like this conference, and the Supreme Court found that was not making the findings. So we may not know what satisfies it, but we know what doesn't satisfy it, and that was the conference in Sednor. I'd like to point out that even if you believe the judge made the findings in his head at that conference, he never put them on the record. That's the other requirement. It's not like a week later, a month later, the judge issued an order that said, I considered all of this at the conference, and here are my reasons, and I'm putting them on the record. The only thing that the government can point to that it claims could possibly constitute the second element of a speedy trial exclusion is the October 2015 order. That was in the context of a motion where the government expressly and repeatedly said, we are seeking an exclusion of time prospectively from the date of this order forward. Is that the October 9th order? Yes. And the government was very clear in its motion. We are seeking an exclusion from the date of this order forward to the new trial dates. The only thing they said about any historical period was exactly what is not enough for an exclusion. The defendant sought a continuance back in December of 2014, and he gave a waiver. That's the only reference the government gives in their motion to that period of time, and we know from Sednor that's not enough. The government was asking for a prospective exclusion. The order, for all intents and purposes, reads for a prospective exclusion. But the government, in submitting a proposed order, backdated it effectively, snuck in that the words March 10th. But there's nothing else in the motion, in the order anywhere, that suggests the judge was actually setting forth the reasons for an exclusion made previously. The judge didn't make that exclusion previously. I see I'm over my time. That's the time for rebuttal. Okay. If there's any interest in the search warrants, I'd be happy to address that. All right. Good morning, Your Honors. May it please the Court, my name is David Novick. I represent the government in this matter. Your Honors, the – I agree with counsel that the critical issue with regard to the Speedy Trial Act motion or appeal is that 57-day period from March to May of 2015. However, I disagree with counsel's characterization that the Court did not adequately take into account the speedy trial factors in deciding in December of 2014 to grant the defendant's motion for a continuance and to push the trial from March until the fall of 2015. Mind you that the only reason why a date was not set in certain, although counsel asked for a date after September and then submitted a speedy trial waiver until the end of October, was the scheduling of these Rule 15 depositions that had to take place. First, it's clear, as Your Honors have already recognized, that the Court very clearly wrestled with the speedy trial factors. One thing counsel did not reference was the motion that counsel had filed in advance of that hearing, which said, among other things, that he could not be ready. There is no way to realistically wade through all of this material to effectively sort out That is what, among other things, similarly stated counsel said in his motion. So when the Court says in December of 2014, the writing is on the wall, I have no choice but to grant that motion despite my interest and despite the interest in finality, that was the backdrop for that. In addition to backdrop and long discussions throughout both that hearing and prior hearings about the complexity of the case, which the Court had already found under 3161, and about the issues with discovery, it was very clear that the Court was concerned about the timing but recognized that it was necessary in a weighing and balancing perspective to grant this motion and to delay the trial. It's also worth noting that the Court does not, in doing this, rely on the speedy trial waiver in the same way that happens in Zedner with demanding that the defendant actually issue a for-all-time prospective speedy trial waiver. The second thing the government notes here, Your Honor, is that the Court did, to the extent that the only thing missing from the December 2014 conference was the sort of rote incantation, I find that these as balancing meets the ends of justice, it's the only thing that was missing from the Court's colloquy in December of 2014. That does happen in the order in October of 2015. What counsel says, I think inappropriately or inaptly, that the government snuck this in, that motion, the government's motion to continue the trial until February, spends a great deal of time with the background in the case and the complexity and the discovery issues that had predated that. There was nothing left that need be said about that prior time. And there are three times that that date, March 2015, the beginning date for the waiver period, is mentioned in the order. There's nothing sneaky about what the government's doing. It's putting on the record part of what had already been done and then dealing with the subsequent issues, things that had not already been put on the record. Perhaps the government should have filed two separate motions, but I don't think, Your Honors, that is necessary or results in a statutory violation of the Speedy Trial Act. And then third, Your Honors, while we principally rely on that October 2015 order, it is worth noting here that in the Court's decision or memorandum denying the motion to dismiss on Speedy Trial grounds, that the Court makes note of the fact that it had in its mind in December 2014 these factors. It actually made that end-of-justice finding in the context of that. And perhaps the only reason why the Court didn't get into more detail was because in the defendant's motion to dismiss, the defendant never actually raises this issue, never actually says that period of time is not excludable, because the defendant actually believed, it's clear from the record, that the time was excluded, that that's what he intended to have happen. And so regardless of whether the Court credits the estoppel argument, it's clear from that that in the context of the Court's order denying the motion to dismiss, that the Court intended to – intended its motion in December – excuse me, its order in December delaying the trial, its order in October waiving the time or excluding the time, and then ultimately in denying the motion to dismiss, that that appropriately, because counsel said he could not be ready for trial, that that was an appropriate exclusion. Your Honors, unless there are questions about the Speedy Trial Act issue further, I can move on to other issues the Court may have questions about. I can address any of the issues, but I can go to the first of the search warrants. Whatever you like.  Thank you, Your Honors. Your Honors, without wading into the issues presented by counsel regarding the tests put forth in Galpin, it's very clear here that perhaps the most straightforward way to resolve this case is evaluating the state of what the agents knew back in 2010 and 2011 when these warrants were executed. It first has to do with the state of the law. And one thing I wanted to respond to in counsel's reply brief was, what was the state of the law back in 2010 or 2011? This was prior to Galpin being decided, prior to this perhaps bright-line test that the Court has since adopted. And without having to get into whether that bright-line test ought to apply in complex financial fraud cases, it's clear back in 2010 and 2011 that the law did not reflect that bright-line test. And so agents looking at this warrant, which was off — these warrants, I should say, which were authorized by a magistrate at the time, were on their face deficient. And another reason, and we had cited, Your Honors, to the 2008 summary order in 22 Blackwatch Trail, where the Court, relying on George, said that in cases where there is otherwise sufficient particularity, and that case, I believe, was a tax investigation that called for a seizure of financial records, that the warrant need not set out what the crime was because it provided no additional guidance, specifically invoking George. And I don't raise that case and did not raise that case, Your Honors, contrary to counsel's argument, because we believe that it is precedential value. The point of raising that argument from a good-faith perspective is, if the judges of this Court believed that at that time there was no bright-line test that was later adopted in Galpin, how could agents be reasonably expected to actually have that belief as well? And why wouldn't they be able to then rely on a magistrate-authorized search warrant as they did here? The second point, Your Honors, is that, in addition to the obvious, at the time, facial validity of the warrants, is this Court's decision, applying this Court's decision in Rosa, and looking at several factors which, consistent with Rosa, tell this Court that these agents were acting in good faith, an understanding of what not just was in the four corners of a very extensive search warrant with very many limiting factors, but also several other things. First, the Court had, and in the record below, and the Court has available to it now, the search warrant plans for both warrants, which had detailed explanations of what the crimes under investigation were, what the statutes were, before and after photos showing that the agents were very cautious in what they were seizing and very careful in what they were seizing. Inventories showing that, in many places within the office, that they didn't seize anything, and that when they did seize things, it was directly related to what was under investigation. And then, perhaps most significantly, showing that the agents didn't believe that these were general warrants. They actually went back and got follow-on warrants when they thought that, in the first instance, they found applications that they weren't sure were covered, or, in the second instance, during the computer search, expanding the date range because they thought it was based on what they had found during the course of the search. So, again, Your Honors, clearly the agents were acting in good faith here. Thank you very much, Your Honors. Thank you. We'll hear the rebuttal. Thank you. On the subject of the Speedy Trial Act, it is not the defendant's position that the court couldn't have excluded time. Just to be clear, that was also an issue in Zedner, and in this Court's decision in Zedner on the way up to the Supreme Court, this Court made clear that, on the record, there was a basis for the judge to do it. The defendant's position is that the judge didn't make the exclusion, didn't do it in his mind at the time, and never put it on the record as required. As for in his mind at the time, I would ask you to revisit what we have in our addendum to the reply brief at pages 1 through 5, which is the transcript of the similar, the analysis. Part of the context here was the motion. The defendant was asking for this time to explain his mind, and that was presumably in the judge's mind as well. And that is 100 percent on all fours with the exact same conference in Zedner in our addendum at 1 through 5. If you look at that, it is the same thing. A defendant seeking an extension, saying, I will waive the time. The judge saying, this case can't go on forever. This is old enough for a criminal case. I can't give you that much time. And the Supreme Court said on that record, just like the record we have here, that is not making the findings in the judge's head. In terms of, I would say this case is a little bit worse than that, because in that case the judge at least set a date out in the future, so we had a fixed period of time with respect to which to do the balance. Here the judge just said, okay, I'm granting an adjournment. It was ten months later when he revisited, okay, when are we going to be ready for trial. On the motion to set a trial date, again, if the order that resulted from that is the findings, that motion just had nothing to do with the historical period of time. And, in fact, this court said in Tunison that there needs to be some care that judges don't rationalize post hoc what they had done in the past. Can I address the search warrants just for one minute? Thank you. The key problem with the search warrants is the 2011 warrant is an all-record search. It is explicit. It's at A289, appendix 289. The very first item is all books and records. The government points to the fact that not all books and records were seized, that the agents maybe even went in without the intention to seize all books and records, but it is an all-books-and-records warrant. The probable cause wasn't there for that. The government didn't ask for an all-records warrant, didn't justify that these 19 entities and individuals were permeated with fraud. It said they were engaged in a specific scheme, a solely fraud scheme, and it obtained a warrant that on its face is just facially unacceptable, and any agent should have known you cannot have an all-records warrant based on the probable cause that was presented. Thank you. Thank you. Rule of reserve decision.